UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC MULL,

                                                    **No. 1:13-cv-00888-MAT**

                              Petitioner,    **DECISION AND ORDER**

        -vs-

STEVEN RACETTE, Supt. GMCF,

                            Respondent.

_____

**INTRODUCTION**

Proceeding pro se, Eric Mull ("Petitioner") has filed a petition for a writ of habeas corpus application pursuant to 28 U.S.C. § 2254. Petitioner's state custody arises from a judgment of conviction entered against him on December 13, 2007, in the New York State Supreme Court, Monroe County (Sirkin, J.) convicting him, after a jury trial, of Burglary in the Second Degree (N.Y. Penal Law ("P.L.") § 140.25(2)).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On the night of February 11, 2007, William and Loretta Darling were at their home in the Town of Gates. Mr. Darling was watching television on the first floor while Mrs. Darling was in the upstairs bedroom. At about 10:30 p.m., the Darlings heard a loud, crashing sound at the side door of their home. Mr. Darling called out, "Who's there?" He then got up, grabbed his handgun, and hid behind a wall. He heard a man's voice call out, "Somebody's chasing me. Somebody's shooting at me." (T.223-24, 238). Mr. Darling

testified that the man "kept coming" toward him even though he told him to stop. Mr. Darling then fired his gun in the man's direction. The man dropped to the floor. Mr. Darling told him, "If you move an f'ing [sic] muscle I'm gonna blow your head off." (T.224-25).

Meanwhile, Mrs. Darling was in her bedroom upstairs when she heard a crashing noise on the side of the house. She heard her husband call out and heard another voice mention something about a shooting. She also heard her husband say, "Stop." This was followed by a gunshot. Because the house was dark, she did not know what happened. When she got to the top of the staircase and saw Petitioner lying on the floor, she recognized him as the person who had come to her house a few days earlier and had offered to shovel their driveway. Petitioner told Mrs. Darling that he lived on Buffalo Road, that his furnace was broken, and that he was trying to raise money to get the furnace repaired. She declined his offer because they had a plow. Petitioner again asked to shovel her driveway, saying that he would not charge very much. Loretta said no and closed the storm door. As she was closing the door, Petitioner reached for the door handle.

That night, Mrs. Darling observed that Petitioner was wearing the same clothing that he had worn the day he came to their house and offered to shovel snow. Mrs. Darling told her husband, "That's the man that was here Wednesday. . . . That's the man who tried to open the door." Petitioner said, "I did not." (T.183-84).

Mrs. Darling called 911. When the police responded, they found that the doorjamb and lock on the side door were broken, the wood on the door was splintered, and there was what appeared to be a footprint on the bottom of the door. When Sergeant David Sapienza took Petitioner into custody, Petitioner said, "They're shooting at me and they pushed me in there." (T.253). The sergeant testified that Petitioner claimed that someone fired gun shots at him and, as he approached the house, someone pushed him from behind, causing him to crash into the house. Sergeant Sapienza searched the area around the outside of the Darling house, including the side yard and back yard. Although there was snow on the ground, Sergeant Sapienza observed no human footprints. He also spoke to people in the area where Petitioner said shots had been fired, but no one had heard anything.

At the police station, Petitioner waived his rights and agreed to speak with Officer Coughlin and Lieutenant VanBrederode. Petitioner related that he had been walking down Buffalo Road when a dark-colored vehicle passed by him three times. On the third pass, a man in the back seat of the vehicle fired three or four gun shots out of the window at him. The man then chased Petitioner down a side street and kicked him through a door at 936 Buffalo Road (the Darling's house). Petitioner said that after he entered the house, the homeowner took a shot at him, and he got on the ground and remained there until the police arrived. VanBrederode informed Petitioner that there were no calls from any of the neighbors

regarding shots fired. Petitioner insisted that someone was trying to kill him.

Coughlin and VanBrederode then escorted Petitioner to the area where he claimed the shots had been fired. The officers searched the area for shell casings and bullet damage but found none. They also questioned people working at nearby businesses and homes. In short, the officers did not find any evidence that a gun had been fired. VanBrederode questioned Petitioner further about how the door to the Darling's home opened. Petitioner claimed that he was pounding on the door, and while he was pounding, the door gave way and opened. VanBrederode asked Petitioner if he had been to the Darling's house before, and Petitioner said that he had been there about a week earlier and offered to shovel their driveway. The wife would not allow him to shovel the driveway because the husband was not home. After searching the area, the officers brought Petitioner back to the police station. There, Coughlin asked Petitioner to recite his version of events again while Coughlin memorialized his statement in writing.

Gregg Roegner, a communications research supervisor at the City of Rochester's 911 call center, examined the log of incoming 911 calls for February 11, 2007, for the period from 10:00 p.m. to midnight, in the area of Buffalo Road in the Town of Gates. Roegner discovered that there was only one 911 call that night, and it was made by Mrs. Darling.

David Eschleman, who lived at 1004 Buffalo Road, was at home on the night of February 11, 2007. He did not hear any gunshots or anything else unusual outside his home between 10:30 p.m. and 11:00 p.m. that night. Similarly, Ronald Antonow lived at 964 Buffalo Road and was at home between 10:00 p.m. and midnight on February 11, 2007. He did not hear anything unusual, and heard no gunshots outside his home at that time.

The defense played the 911 tape for the jury but did not call any witnesses.

On September 12, 2007, the jury convicted Petitioner as charged of second-degree burglary. On December 13, 2007, the trial court adjudicated Petitioner a second felony offender and sentenced to a determinate prison term of 11 years, to be followed by 5 years of post-release supervision.

Petitioner's counseled direct appeal was unsuccessful. People v. Mull, 89 A.D.3d 1445 (4th Dep't 2011), lv. denied, 19 N.Y.3d 965 (2012).[1]

In his petition, Petitioner appears to raise a single claim for relief—that the trial court abused its discretion when reaching its Sandoval ruling and thereby prevented Petitioner from

---

[1] In his exhibits submitted to the Court in reply to Respondent's answer to the petition, Petitioner included copies of what appears to be the entire state court record on appeal, plus a copy of a motion to vacate pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 filed in 2013. However, he did not provide a copy of any decision issued in connection with this motion. The Court notes that Respondent did not reference this motion when recounting the procedural history of Petitioner's proceedings in state court. This discrepancy is of no moment, since none of the claims in the C.P.L. § 440.10 motion are presented in the pending petition.

exercising his constitutional right to testify in his own behalf. Respondent answered the petition, asserting that the Sandoval claim is unexhausted because, although it was raised on direct appeal, it was not fairly presented in federal constitutional terms. Respondent argues that the claim must be deemed exhausted but procedurally defaulted because if Petitioner were to return to state court and assert the claim now, the claim would be subject to dismissal based on a state procedural bar. Moreover, Respondent contends, the claim is not cognizable on federal habeas review. In reply, Petitioner filed what appears to be the state court record on direct appeal, plus a copy of a pro se motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 that he filed in Monroe County Supreme Court in 2013. However, Petitioner did not provide the Court with a copy of the decision, if any, issued in that matter.[2] Petitioner did not respond substantively to Respondent's arguments.

For the reasons discussed below, Petitioner's request for a writ of habeas corpus is denied, and the petition is dismissed.

**MERITS OF THE PETITION**

**I.   Overview of the Sandoval Claim**

Prior to the start of trial, the trial court conducted a hearing pursuant to People v. Sandoval, 34 N.Y.2d 371 (1974), to determine whether the prosecutor would be permitted to impeach

---

[2] The Court notes that Respondent did not reference this motion in the section of his brief setting forth the procedural history of Petitioner's case in state court.

Petitioner with evidence of his prior criminal convictions, if Petitioner took the stand. Over defense counsel's objections, the trial court ruled that if Petitioner chose to testify, the prosecutor would be permitted to cross-examine him with respect to his 2001 conviction for fifth-degree criminal possession of a controlled substance and his 2006 conviction for false personation. The trial court also ruled that the prosecution would be permitted to question him regarding the underlying facts of those convictions. Defense counsel pointed out that the false personation conviction arose from an incident in which Petitioner provided the police with false identification information when he was arrested for possession of burglar's tools. Defense counsel argued that, given the nature of the current charge against Petitioner, testimony regarding the circumstances of that arrest would be unduly prejudicial. The trial court was unconvinced and tentatively ruled that the prosecution would be permitted to question Petitioner about the underlying circumstances of the false personation conviction. (T.4-6).

After the conclusion of the prosecution's case-in-chief, defense counsel asked the trial court to reconsider its Sandoval ruling and preclude any cross-examination of Petitioner with respect to his arrest for possession of burglar's tools, which ultimately led to his conviction for false personation. When the trial court adhered to its original ruling, Petitioner announced that he would not testify at trial. (T.393-94).

## II. Discussion

The Court need not decide whether Petitioner's Sandoval claim has been properly exhausted or is procedurally defaulted because it is not cognizable on federal habeas review due to Petitioner's failure to testify at trial. E.g., Grace v. Artuz, 258 F. Supp.2d 162, 171-72 (E.D.N.Y. 2003) (in absence of petitioner taking the stand to testify at trial, "claim as to the impropriety of the Sandoval ruling [did] not raise a constitutional issue cognizable on habeas review") (citing Carroll v. Hoke, 695 F. Supp. 1435, 1440 (E.D.N.Y. 1988) aff'd, 880 F.2d 1318 (2d Cir. 1989)). The relevant Supreme Court precedent to such a claim is Luce v. United States, 469 U.S. 38 (1984), in which the court considered a defendant's claim based on a district court's in limine ruling under Federal Rule of Evidence 609(b) permitting impeachment of the defendant by a prior conviction. The defendant urged reversal of his conviction on the basis that the ruling had the effect of dissuading him from taking the stand and exercising his constitutional right to testify. The Supreme Court noted that a defendant's failure to testify makes it impossible to weigh the probative value of a conviction as impeachment against its prejudicial effect, that is, to determine whether any error in the in limine ruling was harmful to the verdict. See Luce, 469 U.S. at 42. The Supreme Court adopted the rule that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Luce, 469 U.S. at 43. Federal habeas courts in this

Circuit have applied Luce to reject as speculative and meritless claims by non-testifying state habeas petitioners based on allegedly improper Sandoval rulings. E.g., Grace, 258 F. Supp.2d at 171-72 ("The reviewing court must know the precise nature of the defendant's testimony, which is unknowable when the defendant does not testify. Thus, petitioner's claim as to the impropriety of the Sandoval ruling does not raise a constitutional issue cognizable on habeas review."); accord, e.g., Brathwaite v. Duncan, 271 F. Supp.2d 400, 401 (E.D.N.Y. 2003) (holding Sandoval claim not cognizable on federal habeas review where petitioner did not testify at trial). Petitioner's claim based on the allegedly erroneous Sandoval ruling is accordingly dismissed for failure to raise a federal constitutional issue cognizable on habeas review.

## CONCLUSION

For the foregoing reasons, Eric Mull's request for a writ of habeas corpus is denied and the petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

                                           S/Michael A. Telesca
                                           HON. MICHAEL A. TELESCA
                                           United States District Judge

DATED:    March 13, 2017
             Rochester, New York